IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

| | | |
|---|---|---|
| DONNIE TEAGUE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:08-CV-072 |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## **MEMORANDUM OPINION**

This is an action for judicial review, pursuant to 42 U.S.C. § 405(g), of defendant Commissioner's final decision denying plaintiff's claim for disability insurance benefits. For the reasons that follow, defendant's motion for summary judgment [doc. 9] will be granted, and plaintiff's motion for judgment on the pleadings [doc. 8] will be denied.

I.

*Procedural History*

Plaintiff was born in 1949. He applied for benefits in October 2005, claiming to be disabled by diabetic neuropathy. [Tr. 54, 63]. Plaintiff alleges a disability onset date of October 8, 2005. [Tr. 190]. The application was denied initially and on reconsideration. Plaintiff then requested a hearing, which took place before an Administrative Law Judge ("ALJ") on August 16, 2007.

By decision dated September 20, 2007, the ALJ ruled plaintiff ineligible for benefits. He concluded that plaintiff suffers from the severe impairment of diabetes, but that plaintiff's condition does not meet or equal any impairment listed by the Commissioner. [Tr. 16-17]. Terming plaintiff's subjective complaints "not credible to the extent alleged," the ALJ found him to have the residual functional capacity ("RFC") for medium exertion. [Tr. 17-19]. Relying on vocational expert testimony, the ALJ determined that plaintiff remains able to perform his past relevant work as a mine superintendent. [Tr. 19-20]. Plaintiff was accordingly deemed ineligible for benefits.

Plaintiff then sought review by the Commissioner's Appeals Council. Review was denied on January 4, 2008. [Tr. 4]. The ALJ's ruling became the Commissioner's final decision. *See* 20 C.F.R. § 404.981. Through his timely complaint, plaintiff has properly brought his case before this court. *See* 42 U.S.C. § 405(g).

II.

*Applicable Legal Standards*

Review of the Commissioner's decision is confined to whether the ALJ applied the correct legal standards and whether his factual findings were supported by substantial evidence. 42 U.S.C. § 405(g); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The "substantiality of

2

evidence must take into account whatever in the record fairly detracts from its weight." *Beavers v. Sec'y of Health, Educ. & Welfare*, 577 F.2d 383, 387 (6th Cir. 1978) (quoting *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 488 (1951)). In reviewing administrative decisions, the court must take care not to "abdicate [its] conventional judicial function," despite the narrow scope of review. *Universal Camera*, 340 U.S. at 490.

A claimant is entitled to disability insurance payments if he (1) is insured for disability insurance benefits, (2) has not attained retirement age, (3) has filed an application for disability insurance benefits, and (4) is under a disability. 42 U.S.C. § 423(a)(1). "Disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A).

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423 (d)(2)(A). Disability is evaluated pursuant to a five-step analysis summarized as follows:

1. If claimant is doing substantial gainful activity, he is not disabled.

2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters*, 127 F.3d at 529 (citing 20 C.F.R. § 404.1520). Plaintiffs bear the burden of proof at the first four steps. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at step five. *See id.*

## III.

### Background

Plaintiff's past relevant employment is as a coal mine superintendent. [Tr. 63, 80]. He reportedly stopped working in March 2005. [Tr. 103].

Plaintiff claims worsening foot pain and associated nerve damage which restricts his ability to walk and stand. [Tr. 33, 63]. Plaintiff stands 5' 11" tall and weighs up to 330 pounds. [Tr. 131].

## IV.

### Vocational Expert Testimony

Jo Ann Bullard ("VE") appeared as a vocational expert at the administrative hearing. Ms. Bullard testified that plaintiff's past relevant superintendent work was at the

4

light level of exertion. [Tr. 200].

The ALJ then presented a hypothetical claimant of plaintiff's age, education, and work background capable of medium work. [Tr. 200]. The VE identified jobs existing in sufficient numbers in the state and national economies that the hypothetical claimant could perform. [Tr. 200-01]. If plaintiff's subjective complaints were fully credited, all work would be precluded. [Tr. 201].

V.

*Analysis*

Plaintiff offers several challenges to the decision below. Any issue not specifically raised by plaintiff has been waived. *See, e.g., Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 490-91 (6th Cir. 2006).

A. <u>Dr. Roberts</u>

As noted above, the ALJ found plaintiff capable of performing medium exertion and thus able to return to his past relevant superintendent work, which was performed at the light level. Plaintiff argues that this conclusion was not supported by substantial evidence, particularly in light of the record of Dr. J. Gregory Roberts.

Plaintiff was checked as early as 1996 for possible nerve damage in the feet. [Tr. 124]. In September 2003, Dr. David Escalante noted some edema, coldness, and weakened pulses in the legs. [Tr. 169]. Dr. Escalante diagnosed peripheral neuropathy, peripheral vascular disease, "or a combination of both." [Tr. 170]. However, by December

5

2003 plaintiff had acquired diabetic shoes and was reporting no major problems. [Tr. 167]. At his next appointment nearly one year later, Dr. Escalante termed plaintiff's neuropathy "severe." [Tr. 165].

Plaintiff was then examined on a single occasion by Dr. Roberts in March 2006. Plaintiff appeared chronically ill and was hesitant in his movements. [Tr. 138]. Nonetheless, gait and station were normal and he exhibited full muscle strength throughout. [Tr. 139-40]. Dr. Roberts diagnosed rest pain, stable bilateral polyneuropathy, and morbid obesity. [Tr. 140].

The administrative record thus contains evidence that plaintiff indeed suffers from neuropathy, and that condition may in fact be limiting to some degree. Other evidence of record, however, is not as favorable to plaintiff's claim.

Dr. Wayne Page performed a consultative examination in January 2006 for the limited purpose of "evaluation of the feet for alleged neuropathy." [Tr. 130]. Plaintiff was observed to be well-developed, well-nourished, and in no apparent distress. [Tr. 131]. He was generally cooperative except for "not giving good effort with heel-to-toe walking." [Tr. 131]. Dr. Page's testing revealed "no findings of peripheral neuropathy." [Tr. 132]. Moreover, Dr. Page wrote that plaintiff's "gait is noted to be normal *when he is not being observed*." [Tr. 132] (emphasis added). Based on the results of his neuropathy examination, Dr. Page opined that plaintiff can work without limitation. [Tr. 132].[1]

---

[1] Dr. Page opined only that plaintiff "may have an additional impairment related to early
(continued...)

Nonexamining Dr. James Gregory then completed a Physical RFC Assessment. Dr. Gregory opined that plaintiff would be restricted to the full range of medium exertion. [Tr. 154-57]. He noted that plaintiff's "statements about his symptoms and functional limitations are only partially credible as the severity alleged is not completely consistent with the objective findings from the evidence in the file." [Tr. 160]. Dr. Gregory also wrote that his opinion was more restrictive than Dr. Page's because he (Dr. Gregory) was taking into account plaintiff's obesity as a limiting factor. [Tr. 159].

The ALJ considered the conflicting evidence and concluded that plaintiff's health is not as dire as alleged. The substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts." *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). The ALJ acted within that zone of choice in the present case, adequately explaining his adoption of the evidence he found most credible and consistent.

Substantial evidence also supports the ALJ's conclusion that plaintiff has overdramatized his subjective complaints. Plaintiff claims to have "lost about all of my leg muscles" due to inactivity [Tr. 103, 181, 190], but Dr. Roberts noted full muscle strength, tone, and size throughout. [Tr. 140]. Plaintiff testified that he experienced weight gain

---

[1](...continued)
peripheral neuropathy which would necessitate meticulous foot care." [Tr. 132]. Additionally, on an issue unaddressed by either party, Dr. Page wrote that plaintiff "has *no* normal mobility." [Tr. 131] (emphasis added). Absent argument to the contrary, and in light of the content of Dr. Page's report as a whole, the court concludes that the word "no" is a typographical error.

7

beginning in late 2002 or 2003 due to his purported inability to walk [Tr. 181], yet he actually weighed between 297 and 325 pounds consistently from 1992 through 2002. [Tr. 123-25]. Plaintiff contends that his alleged pain and neuropathy is a result of his diabetes [Tr. 188, 194], yet Drs. Roy Ellis and Rogelio Uy have both at times noted plaintiff either running out of or not taking his medication. [Tr. 118, 120, 122, 127].[2] Similarly, Drs. Ellis, Uy, Roberts, and Escalante have all offered dietary, exercise, and/or weight loss instructions pertaining to the purportedly disabling diabetes and/or obesity [Tr. 118, 120-22, 124, 128, 140, 163], yet plaintiff admittedly is noncompliant. [Tr. 130]. In his briefing [doc. 8, ex. 1, p.2], plaintiff claims to be disabled in part by hypertension and chronic obstructive pulmonary disease, yet he continues to smoke at least one and one-half packs of cigarettes per day. [Tr. 130, 138].

It should be made clear that the ALJ did not conclude that plaintiff suffers no discomfort. Physical complaints were taken into account by the ALJ in restricting the RFC to no more than medium exertion. It is the *severity* of plaintiff's condition that is at issue, and substantial evidence supports the conclusion that the present complaints are overstated.

There is evidence that plaintiff suffers from conditions that could reasonably be expected to cause some discomfort. *See generally Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847 (6th Cir. 1986). However, viewing the present administrative record as a whole, a reasonable fact-finder could conclude that plaintiff's documented conditions

---

[2] Likewise, Dr. Escalante noted in December 2003 that plaintiff had run out of diabetic testing strips. [Tr. 167].

8

are not "of such a severity that [they could] reasonably be expected to produce the alleged disabling pain." *See id.* at 853. Most striking are the observations of examining consultant Page, who found no peripheral neuropathy and noted that plaintiff's gait appeared normal when he did not think he was being watched.

In sum, the present record unquestionably contains substantial evidence to support the conclusions that plaintiff's complaints are overdramatized and that he refuses to responsibly participate in his own health care. Plaintiff's conduct pertaining to smoking, medication, and diet is completely inconsistent with that of a person who truly suffers from the degree of limitation alleged. *See Sias v. Sec'y of Health & Human Servs.*, 861 F.2d 475, 480 (6th Cir. 1988).

> The Social Security Act did not repeal the principle of individual responsibility. Each of us faces myriads of choices in life, and the choices we make, whether we like it or not, have consequences. If the claimant in this case chooses to drive himself to an early grave, that is his privilege – but if he is not truly disabled, he has no right to require those who pay social security taxes to help underwrite the cost of his ride.

*Id.*

### B. Kidney Stones

For the first time, plaintiff at his administrative hearing also appeared to contend that he is disabled by recurring kidney stones. [Tr. 192]. He now accuses the ALJ of "not pursu[ing] the matter and g[iving] it only passing mention in his decision." [Doc. 8, ex. 1, p.5]. This argument is without merit.

9

The ALJ held open the administrative record for two to four weeks after the hearing in order to allow plaintiff time to supplement the record with additional existing evidence. [Tr. 197-99, 201]. Plaintiff, however, submitted no further records in support of his kidney stone (or any other) contention. It is plaintiff's duty to produce evidence of his allegedly disabling history of kidney stones. *See* 20 C.F.R. 404.1512(a).

The court additionally notes plaintiff's testimony that he had suffered only one kidney stone within the past year, which resolved without medical attention. [Tr. 193]. This issue warrants no further discussion.

## C. Obesity

Plaintiff next argues that the ALJ did not take into account the effect of his morbid obesity. Plaintiff is correct that the ALJ devoted minimal discussion to this issue. However, any error is deemed harmless, as the ALJ adopted Dr. Gregory's assessment which expressly and specifically took obesity into account. *See Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 547 (6th Cir. 2004) (harmless error where the ALJ's reasoning could be inferred from his overall discussion of the condition).

Further, the court is compelled to note plaintiff's testimony regarding his obesity. Plaintiff testified that he understands that he would benefit from losing weight, noted some alleged recent weight loss, but then stated that "my weight has never been a factor to me." [Tr. 187]. To now claim disability based on a condition that "has never been a factor to me" utterly "fails the straight face test." *Coffey v. Dowley Mfg., Inc.*, 187 F. Supp.

10

2d 958, 977 (M.D. Tenn. 2002).

### D. Age

Lastly, plaintiff argues that the ALJ erred in not taking into account his "advanced age." Under the applicable regulation, plaintiff is a "person of advanced age." *See* 20 C.F.R. § 404.1563(e) (55 and older).

While it is true that the ALJ did not consider plaintiff's age in this case, he was not required to do so. The ALJ found plaintiff capable of returning to his past relevant work. Age is not considered if a claimant is found able to perform past relevant work. *See* 20 C.F.R. 404.1560(b)(3).

### VI.

*Conclusion*

"The main thrust of plaintiff's argument[s] can be summarized in one sentence: '[S]ubstantial evidence contradicts the [Commissioner's] findings . . ..' While this may indeed be true, it is also true that substantial evidence supports the [Commissioner's] finding[s]." *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir.1993). For the reasons provided herein, the Commissioner's final decision was supported by substantial evidence. Given the applicable standard of review, that decision must be affirmed. *See id*. An order consistent with this opinion will be entered.

ENTER:

s/ Leon Jordan
United States District Judge